SEYFARTH SHAW LLP
Justin T. Curley (SBN 233287)
jcurley@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:    (415) 397-2823
Facsimile:    (415) 397-8549

SEYFARTH SHAW LLP
Jeffrey A. Nordlander (SBN 308929)
jnordlander@seyfarth.com
400 Capitol Mall, Suite 2300
Sacramento, California 95814
Telephone:    (916) 448-0159
Facsimile:    (916) 558-4839

Attorneys for Defendant
HAWTHORN SENIOR LIVING, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MILLER, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HAWTHORN SENIOR LIVING, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:26-cv-01779-TLN-JDP<br><br>[El Dorado Superior Court, Case No. 26CV0626]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date:                August 20, 2026<br>Time:               2:00 p.m.<br>Courtroom:      2<br><br>*[Filed Concurrently With the Declaration of Teresa Hargreaves and Declaration of Jeffrey A. Nordlander In Support of Opposition To Motion To Remand]*<br><br>Complaint Filed:    March 5, 2026<br>Removal Date:       May 11, 2026<br>Trial Date:             Not Set |

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.................................................1

III.   LEGAL STANDARD FOR REMOVAL ...................................................................3

    A.     CAFA Jurisdiction Is Interpreted Expansively. ...........................................3

    B.     A Defendant Need Only Plead The Basis For Removal..................................4

    C.     Defendant Need Not Submit Business Records In Support Of Removal..........4

IV.    ARGUMENT ..............................................................................................................5

    A.     The Amount in Controversy On Plaintiff's Unpaid Meal Break Claim Is At Least $552,992.82.................................................................................6

    B.     The Amount in Controversy On Plaintiff's Rest Break Claim Amounts To $610,130.04...........................................................................................8

    C.     The Amount in Controversy On Plaintiff's Claim for Unpaid Minimum Wages Is At Least $1,030,372.48. ................................................................9

    D.     The Amount in Controversy On Plaintiff's Waiting Time Claim Is At Least $1,609,771.20......................................................................................10

    E.     The Amount in Controversy on Plaintiff's Claim for Untimely Payment of Wages Is At Least $1,478,100.00. .............................................................11

    F.     The Amount in Controversy On Plaintiff's Claim for Inaccurate Wage Statements Is At Least $241,600.00. ............................................................12

    G.     Defendant's Attorneys' Fees Calculations Are Reasonable And Supported.....................13

V.     CONCLUSION...........................................................................................................15

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alvarez v. Office Depot, Inc.*,
2017 WL 5952181 (C.D. Cal. Nov. 30, 2017)...................................................................................4

*Amoco Oil Co. v. United States*,
234 F. 3d 1374 (Fed. Cir. 2000)........................................................................................................4

*and Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ........................................................................................................14

*Andrade v. Beacon Sales Acquisition, Inc.*,
No. CV1906963CJCRAOX, 2019 WL 4855997 (C.D. Cal. Oct. 1, 2019) ...................................7, 10

*Arias v. Residence Inn by Marriott*,
936 F. 3d 920 (9th Cir. 2019) .......................................................................................................5, 14

*Bell v. NuSil Tech. LLC*,
2021 WL 1208013 (E.D. Cal. Mar. 31, 2021) ...............................................................................13

*Beltran v. Olam Spices & Vegetables, Inc.*,
2021 WL 2284465 (E.D. Cal. June 4, 2021) ..................................................................................14

*Castro v. Paragon Indus., Inc.*,
2020 WL 1984240 (E.D. Cal. Apr. 27, 2020)................................................................................14

*Cavada v. Inter-Cont'l Hotels Grp., Inc.*,
2019 WL 5677846 (S.D. Cal. Nov. 1, 2019) ...................................................................................4

*Conrad Assocs. v. Hartford Acc. & Indem. Co.*,
994 F. Supp. 1196 (N.D. Cal. 1998) ..............................................................................................13

*Dart Cherokee Basin Operating Co. v. Owens*,
574 US 81 (2015)...........................................................................................................................3, 4

*Dawson v. Hitco Carbon Composites, Inc.*,
2019 WL 7842550 (C.D. Cal. Nov. 25, 2019)................................................................................14

*Diaz v. Ardagh Metal Beverage USA, Inc.*,
2022 WL 3368537 (E.D. Cal. Aug. 15, 2022)................................................................................13

*Faulkner v. Astro-Med, Inc.*,
1999 WL 820198 (N.D. Cal. 1999) ................................................................................................13

*Feao v. UFP Riverside, LLC*,
No. CV173080PSGJPRX, 2017 WL 2836207 (C.D. Cal. June 29, 2017) ....................................7, 9

ii

*Ferrell v. Buckingham Prop. Mgmt.*,
  2020 WL 4364647 (E.D. Cal. July 30, 2020) ..................................................................................14

*Fong v. Regis Corp.*,
  2014 WL 26996 (N.D. Cal. Jan. 2, 2014) ........................................................................................11

*Franke v. Anderson Merchandisers LLC*,
  2017 WL 3224656 (C.D. Cal. July 28, 2017) ...................................................................................8

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,
  899 F.3d 785 (9th Cir. 2018) .........................................................................................................13

*Galt G/S v. JSS Scandinavia*,
  142 F.3d 1150 (9th Cir. 1998) .......................................................................................................13

*Garcia v. Praxair, Inc.*,
  2018 WL 4471151 (N.D. Cal. Sept. 18, 2018) .............................................................................7, 9

*Gaus v. Mile, Inc.*,
  980 F.2d 564 (9th Cir. 1992) ...........................................................................................................3

*Herrera v. Carmax Auto Superstores California*,
  LLC, 2014 WL 12586254 (C.D. Cal. June 12, 2014).......................................................................8

*Hughes v. McDonalds Corp.*,
  No. C 14-1700 PJH, 2014 WL 3797488 (N.D. Cal. Jul. 31, 2014) ...............................................13

*Hull v. Mars Petcare US, Inc.*,
  2018 WL 3583051 (C.D. Cal. July 25, 2018)...............................................................................7, 9

*Ibarra v. Manheim Invs., Inc.*,
  775 F.3d 1193 (9th Cir. 2015) ......................................................................................................4, 5

*Jauregui v. Roadrunner Transportation Servs., Inc.*,
  28 F.4th 989 (9th Cir. 2022) ...........................................................................................................1

*Jordan v. Nationstar Mortg. LLC*,
  781 F.3d 1178 (9th Cir. 2015) .........................................................................................................3

*Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,
  199 F. Supp. 2d 993 (C.D. Cal. 2002) .............................................................................................5

*Korn v. Polo Ralph Lauren Corp.*,
  536 F. Supp. 2d 1199 (E.D. Cal. 2008)...........................................................................................11

*Lewis v. Verizon Commc'ns, Inc.*,
  F.3d 395, 400 (9th Cir. 2010) .....................................................................................................5, 11

*Long v. Destination Maternity Corp.*,
  No. 15-cv-2836-WQH-RBB, 2016 WL 1604968 (S.D. Cal. Apr. 21, 2016) ...............................6, 11

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

*Lopez v. Gen. Dynamics Info. Tech., Inc.*,
   No. 24-CV-01743-BAS-DEB, 2025 WL 2308098 (S.D. Cal. Aug. 11, 2025)....................................14

*Mackall v. Healthsource Global Staffing, Inc.*,
   2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) ...............................................................................11

*Moore v. Addus Healthcare, Inc.*,
   2019 WL 368584 (N.D. Cal. Aug. 7, 2019) ....................................................................................5

*Muniz v. Pilot Travel Centers LLC*,
   2007 WL 1302504 (E.D. Cal. May 1, 2007) ...................................................................................5

*Patel v. Nike Retail Servs., Inc.*,
   58 F. Supp. 3d 1032 (N.D. Cal. 2014) .........................................................................................7, 9

*Perez v. Rose Hills Co.*,
   131 F.4th (9th Cir. 2025) ...............................................................................................................4

*Perez v. Waterco of Cent. States, Inc.*,
   No. 3:25-cv-00922-BEN-KSC, 2025 WL 2315438 (S.D. Cal. Aug. 11, 2025) .............................6

*Ramos v. Schenker, Inc.*,
   2018 WL 5779978 (C.D. Cal. Nov. 1, 2018)................................................................................14

*Rea v. Michaels Stores Inc.*,
   742 F.3d 1234 (9th Cir. 2014) .......................................................................................................1

*Rivera v. Jeld-Wen, Inc.*,
   2022 WL 3702934 (S.D. Cal. Feb. 4, 2022) ................................................................................13

*Rodriguez v. Gen. Dynamics Info. Tech., Inc.*,
   No. 25-cv-00626-BAS-DEB, 2025 WL 3078706 (S.D. Cal. Nov. 4, 2025) ...................................6

*Sanchez v. Abbott Lab'ys*,
   2021 WL 2679057 (E.D. Cal. June 30, 2021) ..........................................................................5, 13

*Soto v. Tech Packaging, Inc.*,
   2019 WL 6492245 (C.D. Cal. Dec. 3, 2019) ...............................................................................10

*Stanley v. Distribution Alternatives, Inc.*,
   2017 WL 6209822 (C.D. Cal. Dec. 7, 2017) ...............................................................................7, 9

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .......................................................................................................14

*Takeda v. Northwestern Nat'l Life Ins. Co.*,
   765 F.2d 815 (9th Cir. 1985) .........................................................................................................3

*Vasquez v. RSI Home Products, Inc.*,
   2020 WL 6778772 (C.D. Cal. Nov. 12, 2020)..............................................................................14

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

*Wheatley v. MasterBrand Cabinets, LLC*,
    2019 WL 688209 (C.D. Cal. Feb. 19, 2019)......................................................................................8

**Federal Statutes**

Class Action Fairness Act of 2005.................................................................................... *passim*

**State Statutes**

California Labor Code § 203 .....................................................................................................2, 10

California labor Code § 204.......................................................................................................11, 12

California Labor Code § 210 .....................................................................................................11, 12

California Labor Code § 226(a).....................................................................................................2, 12

California Labor Code § 226(e)..........................................................................................................12

California Labor Code § 1194.2 ........................................................................................................10

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

## I.      INTRODUCTION

On May 11, 2026, Defendant Hawthorn Senior Living, LLC ("Defendant") removed this action under the Class Action Fairness Act of 2005 ("CAFA"). (Dkt. 1.) Plaintiff argues that Defendant's May 11, 2026, Notice of Removal does not establish that the amount in controversy exceeds the $5,000,000.00 jurisdictional minimum. (Dkt. 15.)

Plaintiff's motion is without merit and should be denied. The amount in controversy is "an estimate of the **entire** potential amount at stake in litigation" rather than the likely or probable liability of a given defendant. *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (emphasis in original). The amount in controversy for Plaintiff's claims, based on the allegations of the Complaint, reasonable liability assumptions, and the size of the putative class, significantly exceeds $5,000,000.00. Defendant's calculations and assumptions regarding the amount in controversy are reasonable and grounded in evidence and Plaintiff's own allegations. Defendant is not required to prove Plaintiff's claims for him—the amount in controversy is the total amount in dispute assuming the truth of the allegations, not a prospective assessment of Defendant's actual liability. Plaintiff's self-serving criticisms of these calculations and assumptions have no merit whatsoever.

Plaintiff has presented no contrary evidence, analysis, or calculations regarding the amount in controversy. As the Ninth Circuit has held, where, as here, a defendant offers "substantial, plausible evidence that damages at issue exceed [] $5,000,000.00, and [there is] no evidence at all to the contrary" from the plaintiff, then removal is proper. *Rea v. Michaels Stores Inc.,* 742 F.3d 1234, 1239 (9th Cir. 2014). Therefore, Defendant respectfully requests the Court to deny Plaintiff's motion to remand.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on March 5, 2026, in the Superior Court of California, County of El Dorado. (*See* Dkt. 1.) Defendant timely removed on March 11, 2026, under CAFA. (*See* Dkt. 1.)

Plaintiff alleges Defendant employed him as a non-exempt, hourly employee between August 2025 to January 2026. (Dkt. 1 at ¶ 18.) The Complaint does not allege Plaintiff's job position, duties, or even the specific location where Plaintiff worked. (*See generally* Dkt. 1.) Based on the face of the Complaint, all that can gleaned about Plaintiff is that he worked for Defendant somewhere in El Dorado County between August 2025 to January 2026 in some unspecified job position. (*Id.*)

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Plaintiff alleges that Defendant "engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California," (Compl., ¶ 25), and that Plaintiff and the putative class experienced the following wage-and-hour violations:

- Defendant allegedly failed to pay employees "for all regular and/or overtime wages earned and for missed meal periods and rest breaks." (Compl., ¶ 25.)

- Defendant allegedly failed to use shift differential pay for "Plaintiff and the other class members who worked more than eight (8) hours in a day or forty (40) hours in a workweek at the rate of one-and-one-half times (1.5x) all hours worked in excess of eight (8) hours in a day or forty (40) hours in a workweek." (Compl., ¶¶ 37, 49-51.) "During the relevant time period, Plaintiff and the other class members worked in excess of eight (8) hours in a day and/or forty (40) hours in a week." (Compl., ¶ 52.)

- Defendant allegedly failed to pay premium payments, "Plaintiff and the other class members did not receive payment of all wages, including overtime and minimum wages and meal and rest period premiums..." (Compl., ¶¶ 31-32.)

- Defendant allegedly "failed to provide all requisite uninterrupted meal and rest periods." (Compl., ¶ 38.)

- Defendant allegedly "failed to pay Plaintiff and the other class members at least minimum wages for all hours worked." (Compl., ¶¶ 39, 41) "Pursuant to those sections [of law], Plaintiff and the other class members are entitled to recover the unpaid balance of their minimum wage compensation, as well as interest, costs, attorney's fees, and liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." (Compl., ¶ 79.)

- Defendant allegedly failed to pay all wages due at discharge or resignation. (Compl., ¶ 40.) "Plaintiff and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (Comp., ¶ 87.)

- Defendant allegedly failed to "keep complete or accurate payroll records for Plaintiff and the other class members." (Compl., ¶ 43.) "Plaintiff and the other class members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a) or an aggregate penalty not exceeding $4,000 per employee." (Compl., ¶ 99.)

- Defendant allegedly failed to reimburse Plaintiff and other class members for "all necessary business-related expenses and costs." (Compl., ¶ 44.) "Plaintiff and the other class members are entitled to recover from Defendants their business-related expenses and costs incurred during the course and scope of their employment, plus interest accrued from the date on which the employee incurred the necessary expenditures at the same rate as judgments in civil actions in the State of California." (Compl., ¶ 110.)

2

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Precisely how Defendant engaged in this pattern and practice wage abuse is not specified in the Complaint. Apart from alleging that Defendant did not include shift differential pay and bonus pay when paying overtime, the Complaint includes no facts explaining the basis of Plaintiff's claims. (*See generally* Dkt. 1.)

The class Plaintiff seeks to represent is "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California" between March 5, 2022, to the present. (Compl., ¶ 13.)

Defendant employed approximately 707 individuals in California between March 5, 2022, to May 11, 2026 ("the Class Period"). (Declaration of Teresa Hargreaves ("Hargreaves Decl." or "Hargreaves Declaration") ¶ 5.) The average base hourly rate during the Class Period was $18.58. (*Id.*)

Class members worked 27,728 workweeks and 14,781 biweekly pay periods over the Class Period.[1] (*Id. ¶¶* 5-7.) During these workweeks, employees worked 82,095 shifts that were more than three and a half hours in length, and 74,407 of more than five hours in length. (*Id. ¶¶* 5-7.)

## III.    LEGAL STANDARD FOR REMOVAL

### A.    CAFA Jurisdiction Is Interpreted Expansively.

Plaintiff claims that courts "strictly construe removal status against removal jurisdiction," and federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance," citing to cases like *Gaus v. Mile, Inc.*, 980 F.2d 564 (9th Cir. 1992) and *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985). (Dkt. 21 at 8:5–9.)

What Plaintiff fails to mention is that the Ninth Circuit has specifically held that the Supreme Court's decision in *Dart Cherokee Basin Operating Co. v. Owens*, 574 US 81 (2015) overruled these prior decisions to the extent they suggest jurisdiction under CAFA is "strictly construed." *See Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 n.2 (9th Cir. 2015) ("the Supreme Court's decision in Dart Cherokee undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.") (internal quotations omitted).

---

[1] The workweek figure (29,268) in Defendant's Notice of Removal was calculated using employees' dates of employment reflected in Defendant's census records. With the benefit of additional analysis, Defendant relies on more precise workweek figure 27,728 in the present opposition that was calculated using Defendant's timekeeping and payroll records from March 5, 2022, to May 11, 2026.

3

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

After *Dart Cherokee*, there is no question that "CAFA [is] to be interpreted expansively," *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015), yet Plaintiff misleadingly claims otherwise. *See Amoco Oil Co. v. United States*, 234 F. 3d 1374, 1378 (Fed. Cir. 2000) ("By failing to cite controlling adverse authority, the conduct of appellant's counsel was inappropriate and potentially a violation of counsel's duty of candor toward the court").

In wage-and-hour cases, courts typically expect defendants to substantiate readily knowable workforce facts (such as the number of employees, workweeks, and pay rates) through company records. *Perez v. Rose Hills Co.,* 131 F.4th at 808, 808 (9th Cir. 2025). But the Ninth Circuit does not require defendants to prove the violation rate at the jurisdictional stage. *Id.* (requiring such proof would make "little sense" where the defendant may believe the true violation rate is zero). A defendant may instead ground its assumed violation rate in the complaint's classwide allegations. *Id.* ("a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint").

**B.     A Defendant Need Only Plead The Basis For Removal.**

A defendant seeking removal under CAFA must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co. v. Owens,* 574 US 81 (2015). The notice of removal "**need not contain evidentiary submissions**," rather a defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" is sufficient. *Id.* at 84, 89 (emphasis added). If the basis for removal is challenged, then both sides submit evidence regarding removal . . . .

**C.     Defendant Need Not Submit Business Records In Support Of Removal.**

A removing defendant is not required to submit documentary evidence with its notice of removal, or with its opposition to a remand motion. Instead, as Defendant has done here, a declaration from a person with knowledge of its personnel, timekeeping, and payroll practices and records is sufficient. *See Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *2-9 (S.D. Cal. Nov. 1, 2019) (declaration of director of human resources, along with allegations in the complaint, sufficiently demonstrated the amount in controversy); *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (holding "that the evidence Defendant provides through [its Lead Human Resources Business Partner's] declaration is acceptable for purposes of determining the CAFA amount in

4

controversy.") *Moore v. Addus Healthcare, Inc.*, 2019 WL 368584, at *3 (N.D. Cal. Aug. 7, 2019) (finding that a declaration from a human resources manager executive "who attests to basic facts based on her normal business responsibilities and her personal review of Defendants' business records" is sufficient).

## IV.    ARGUMENT

CAFA's amount-in-controversy requirement is "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, F.3d 395, 400 (9th Cir. 2010). It is intended to "reflect[] the maximum recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F. 3d 920, 927 (9th Cir. 2019) (citing *Chavez v. JPMorgan Chase*, 888 F. 3d 413, 417 (9th Cir. 2018)). The "court must 'assum[e] that the allegations of the complaint are true and assum[e that] a jury [will] return[ ] a verdict for the plaintiff on all claims made in the complaint.'" *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

A defendant can rely on a "chain of reasoning that includes assumptions to satisfy its burden of proof," and the reasoning and assumptions need only be "reasonable, and not constitute mere speculation and conjecture." *Ibarra*, 775 F.3d at 1197–99. The burden is not a "daunting" one because the defendant "is not obligated to research, state, and prove the plaintiff's claims for damages." *Sanchez*, 2021 WL 2679057, at *2 (E.D. Cal. June 30, 2021) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008)). Nor is the defendant obligated "to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007).

Plaintiff's sole argument is that Defendant has not demonstrated that the amount-in-controversy requirements to establish jurisdiction. Plaintiff is wrong. Defendant has shown—through the declaration of Teresa Hargreaves, Plaintiff's allegations, and reasonable assumptions derived therefrom—that the amount in controversy exceeds the $5 million minimum threshold sufficient to establish jurisdiction under CAFA. This record amounts to competent evidence.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

The Hargreaves Declaration provides key workforce metrics and personal testimony that Ms. Hargreaves personally reviewed these employment records for Plaintiff and the putative class. (Hargreaves Decl.) California District Courts regularly accept comparable declarations based on record review to establish CAFA jurisdictional facts. *See, e.g., Perez v. Waterco of Cent. States, Inc.*, No. 3:25-cv-00922-BEN-KSC, 2025 WL 2315438, at *3 (S.D. Cal. Aug. 11, 2025) ("*Waterco*") (accepting payroll-manager declaration summarizing class size, pay periods/workweeks, and pay rates as a sufficient basis for CAFA amount-in-controversy calculations); *Rodriguez v. Gen. Dynamics Info. Tech., Inc.*, No. 25-cv-00626-BAS-DEB, 2025 WL 3078706, at *3 (S.D. Cal. Nov. 4, 2025) (relying on declaration from defendant's "Director of Data Analytics" summarizing workforce data for the proposed class period); *Long v. Destination Maternity Corp.*, No. 15-cv-2836-WQH-RBB, 2016 WL 1604968, at *6 (S.D. Cal. Apr. 21, 2016) (accepting HR manager declaration based on HRIS database results; defendant need not produce business records establishing the precise class size and precise damages calculations to meet its burden).

Thus, Plaintiff's motion to remand must be denied.

### A.    The Amount in Controversy On Plaintiff's Unpaid Meal Break Claim Is At Least $552,992.82.

Plaintiff alleges that "Defendants failed to provide Plaintiff and the other class members all required . . . meal periods during the relevant period." (Compl. ¶¶ 25, 27, 28.) The Complaint also alleges that Defendant failed to compensate hourly employees for missed and uninterrupted meal breaks. (Compl. ¶¶ 25, 61, 62.) This was part of an alleged "pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California." (Compl. ¶ 25.) The Complaint does not allege facts regarding how frequently class members did not receive compliant meal periods, and does not include **any** allegations explaining Plaintiff's factual theory for her meal break claim.[2]

Defendant conservatively assumes two meal period violations per workweek, a violation rate of 40%. Similar to Defendant's calculations regarding rest breaks, this is a reasonable approximation of Plaintiff's potential recovery given the allegation that Defendant has engaged in a "pattern and practice of wage abuse" and it falls below violation rates that courts have routinely approved to determine the

---

[2] Plaintiff presumably prefers to keep his claims open ended so he can pursue any possible theory he can identify through discovery.

6

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

amount in controversy on meal break claims. *See, e.g., Garcia v. Praxair, Inc.,* 2018 WL 4471151, at \*4 (N.D. Cal. Sept. 18, 2018) (denying remand motion, and finding the estimate of three meal break violations per week "reasonable"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1041 (N.D. Cal. 2014) (approving case that "takes into account three meal period violations per week"); *Hull v. Mars Petcare US, Inc.,* 2018 WL 3583051, at \*4 (C.D. Cal. July 25, 2018) ("Courts in this district routinely find a 60% assumption reasonable where, as here, the alleged violations are based on a standard policy."); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at \*2 (C.D. Cal. Dec. 7, 2017) (rejecting argument that "three missed meal breaks per week are unreasonable"); *Feao v. UFP Riverside, LLC,* No. CV173080PSGJPRX, 2017 WL 2836207, at \*1 (C.D. Cal. June 29, 2017) ("Defendant only factors in a 60 percent violation rate for Plaintiff's meal and rest period claims. . . . In light of the case law and the language in the Complaint, Defendant's assumptions are sufficiently supported.").

Plaintiff argues that these assumptions are unreasonable because Defendant provides "no reasonable explanation for assuming that each putative class member experienced two meal and rest period violations per workweek." (Dtk. 15 at 14.) However, the Hargreaves Declaration attests to the class period average hourly rate ($18.58), and the total number of meal-period eligible shifts (*i.e.*, those lasting more than five hours) during the class period (74,407). Plaintiff's arguments regarding full-time versus part time employees are inapposite, because Defendant based its meal period exposure assessment on shifts lasting more than five hours, not on workweeks. By definition, this calculation is only including meal-period eligible shifts, regardless of whether they worked full-time or part-time employees (although regardless Defendant's employees are scheduled to standard five-day a week shifts). Defendant is not "required to comb through its records to identify and calculate the exact frequency of violations," especially considering that its position is that there were *no* meal break violations. *Andrade*, 2019 WL 4855997, at \*4.

Moreover, Plaintiff presents no evidence to rebut Defendant's calculations. Plaintiff offers no evidence explaining the frequency at which he believes employees were not provided compliant meal breaks, or even contrary estimated violation rates. By itself, Plaintiff's complete lack of evidence warrants finding that Defendant has met its burden for removal. *See*, *e.g.*, *Franke v. Anderson*

7

*Merchandisers LLC*, 2017 WL 3224656 at *3 (C.D. Cal. July 28, 2017 (denying motion to remand and holding "[in light of] the lack of any rebuttal evidence from [plaintiff], the Court finds [defendant] has proven the meal and rest break premium amounts by a preponderance of the evidence.").

Plaintiff cannot simply rely on the vagueness of his Complaint to defeat removal, which is exactly what Plaintiff is attempting to do here *See*, *e.g.*, *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *4 (C.D. Cal. Feb. 19, 2019) ("[T]he Complaint provides no indication of the violation rate. Plaintiff cannot avoid federal jurisdiction by purposefully opaque pleading."). As the court stated in *Herrera v. Carmax Auto Superstores California*, LLC, 2014 WL 12586254, at *2 (C.D. Cal. June 12, 2014), "when a complaint vaguely alleges 'consistent' violations based on the defendant's 'uniform policies,' the removing defendant is often incapable of producing any evidence going directly to the frequency of the violations, especially given that the defendant likely disagrees that any violation occurred at all . . . While the plaintiff is the master of his complaint and can avoid federal jurisdiction by limiting potential recovery, it is illogical that a plaintiff could reduce the amount in controversy by using broader and vaguer terms." *Id*.

Accordingly, the amount in controversy on Plaintiff's meal break claim is at least **$552,992.82** ($18.58 [average hourly rate] x 74,407 [meal-period eligible shifts]).

**B.      The Amount in Controversy On Plaintiff's Rest Break Claim Amounts To $610,130.04.**

Plaintiff alleges that Defendant failed to provide class members with compliant rest periods. (Compl. ¶¶ 25, 27, 28.) The Complaint does not include any factual allegations explaining the basis of Plaintiff's rest period claim. Instead, Plaintiff simply parrots the statutory language and without supporting facts asserts that O "Defendants intentionally and willfully required Plaintiff and the other class members to work" during purported rest periods, thereby failing to release Plaintiff and other class members from employer control. (Compl. ¶¶ 61, 62, 63.)

In the absence of any factual allegations explaining the basis of Plaintiff's rest period claim or contrary analysis or calculations, Defendant's reasonable assumption of two rest period violations per putative class member per workweek and potential exposure of $610,130.04 ($18.58 Average Hourly Rate x [40 perfect x 82,095 shifts over 3.5]) must be accepted. (Dkt. 1 at 8:30, 31.)

8

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

First, the Hargreaves Declaration supports the reasonableness of Defendant's calculations. Specifically, the Hargreaves Declaration establishes that class members worked 82,095 shifts that were in excess of 3.5 hours and therefore required a rest break. Based on Plaintiff's allegations that Defendant engages in a pattern of "wage abuse" and deprives employees of complete rest breaks and failing to premiums pay when rest breaks were missed, Defendant's assumptions of two rest break violations per week is reasonable and falls below violation rates that courts have routinely approved to determine the amount in controversy on meal break claims. *See, e.g., Garcia v. Praxair, Inc.,* 2018 WL 4471151, at \*4 (N.D. Cal. Sept. 18, 2018) (denying remand motion, and finding the estimate of three meal break violations per week "reasonable"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1041 (N.D. Cal. 2014) (approving case that "takes into account three meal period violations per week"); *Hull v. Mars Petcare US, Inc.,* 2018 WL 3583051, at \*4 (C.D. Cal. July 25, 2018) ("Courts in this district routinely find a 60% assumption reasonable where, as here, the alleged violations are based on a standard policy."); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at \*2 (C.D. Cal. Dec. 7, 2017) (rejecting argument that "three missed meal breaks per week are unreasonable"); *Feao v. UFP Riverside, LLC,* No. CV173080PSGJPRX, 2017 WL 2836207, at \*1 (C.D. Cal. June 29, 2017) ("Defendant only factors in a 60 percent violation rate for Plaintiff's meal and rest period claims. . . . In light of the case law and the language in the Complaint, Defendant's assumptions are sufficiently supported.").

Therefore, this claim adds $610,130.04 to the amount in controversy.

**C.      The Amount in Controversy On Plaintiff's Claim for Unpaid Minimum Wages Is At Least $1,030,372.48.**

Plaintiff alleges that "Defendants knew or should have known that Plaintiff and other class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for all hours worked." (Compl., ¶ 31.) Plaintiff offered no evidence or stipulation to reduce the amount in controversy to less than one hour of unpaid wages per employee per week. Again, Plaintiff does not include the amount of alleged minimum wages, but reasonable assumptions can be drawn from the workweeks and a conservative assumption of one unpaid hour of minimum wages per work week. *Andrade v. Beacon Sales Acquisition, Inc.*, No.

9

CV1906963CJCRAOX, 2019 WL 4855997, at *3 (C.D. Cal. Oct. 1, 2019) (finding "a violation rate of one hour of off-the-clock work" per workweek to be a "limited and reasonable assumption" for class action complaint containing similar "sweeping allegations"; *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (C.D. Cal. Dec. 3, 2019) (noting that defendant's estimated violation rate of one hour of minimum wage a week was reasonable when "Defendant 'engaged in a pattern and practice of wage abuse' against Plaintiff and the putative class members…'").

Accordingly, Defendant's non-exempt, hourly employees worked approximately 27,728 workweeks between March 5, 2022, and May 11, 2026. Assuming one hour of unpaid minimum wages per work week during the putative class period, potential damages for unpaid minimum wages and liquidated damages under Labor Code § 1194.2 come to approximately **$1,030,372.48** ((27,728 Workweeks x 60 Minutes x Average Minimum Wage During Class Period ($18.58) + (Liquidated Damages in Equivalent Amount)).

### D.    The Amount in Controversy On Plaintiff's Waiting Time Claim Is At Least $1,609,771.20.

The Complaint alleges that "Defendants knew or should have known that Plaintiff and the other class members were entitled to receive all wages owed to them upon discharge or resignation, including overtime and minimum wages and meal and rest period premiums, and they did not, in fact, receive all such wages owed to them at the time of their discharge or resignation." (Compl., ¶ 31.) Based on this theory, Plaintiff alleges he and other employees are entitled to "statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (Compl., ¶ 86.)

Based on the derivative nature of a claim for waiting time penalties and the allegations in the Complaint—asserting that Defendant engages in a pattern and practice of wage abuse, fails to pay minimum and overtime wages, and fails to pay required meal and rest premium pay—it is reasonable to assume that each of 481 employees whose employment terminated from March 5, 2022 to May 11, 2026, had *some* amount of unpaid wages at termination and are therefore owed waiting time penalties. *See Mackall v. Healthsource Global Staffing, Inc.*, 2016 WL 4579099, at *6 (N.D. Cal. Sept. 2, 2016) ("[A]llegations of willful failure to timely pay wages (based on alleged overtime and meal and rest break

10

violations) were sufficient to support estimations of waiting time penalties at a 100% rate"); *Fong v. Regis Corp.*, 2014 WL 26996, at \*6 (N.D. Cal. Jan. 2, 2014) (holding allegation that employer "systematically failed to pay 'all wages due and owing' upon termination . . . reasonably supports the assumption that each former employee might be entitled to the statutory maximum damages"); *Long v. Destination Maternity Corp.*, 2016 WL 1604968, at \*9 (S.D. Cal. Apr. 21, 2016) (finding that where plaintiff alleged "class members have still not been paid money owed to them at the end of their employment," it is reasonable to assume "that each of the class members who have left [d]efendant's employ would seek the maximum thirty-day waiting penalty").

Because Plaintiff neither alleged in the Complaint nor submitted evidence showing Defendant paid him and/or the putative class members all unpaid wages owed before the 30th day following the end of their employment, Defendant reasonably assumed Plaintiff and the putative class members whose employment terminated seek the statutory maximum (i.e., 30 times their daily wages). *See Lewis*, 627 F. 3d at 400 (amount in controversy includes maximum amount plaintiff could recover if allegations in complaint are proven); *Korn*, 536 F. Supp. 2d at 1205 ("Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met").

Accordingly, the amount in controversy on Plaintiff's claim for waiting time penalties is at least **$1,609,771.20** (481 [separated employees] x 30 days x 8 hours x $18.58 [average hourly rate]).

### E.    The Amount in Controversy on Plaintiff's Claim for Untimely Payment of Wages Is At Least $1,478,100.00.

Plaintiff's sixth claim alleges that Defendant failed to timely pay all owed wages during employment. Plaintiff alleges that "Plaintiff and the other class members did not receive payment of all wages, including overtime and minimum wages and meal and rest period premiums, with any time permissible under California labor Code section 204." (Compl., ¶ 75.)

The remedy for a violation of Labor Code § 204 is a statutory penalty under Labor Code § 210. Labor Code § 210 ("In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections . . .

11

204 . . ., shall be subject to a penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.").

Class members worked approximately 14,781 pay periods during the Class Period. Taking Plaintiff's allegations as true, damages on this claim would come to approximately **$1,478,100** (14,781 Pay Periods x $100 Penalty Per Pay Period For Initial Violations). Assuming a 100% violation rate on this claim is reasonable, because like with Plaintiff's wage statement claim if an employee has even one cent of unpaid wages during a pay period, they could seek a penalty under Labor Code § 210 for untimely payment of wages. As for Plaintiff's complaints regarding Defendant applying only the initial violation rate, Defendant was being conservative with its calculations. If Plaintiff would prefer to calculate potential exposure based accounting for the subsequently penalty rate—which is ordinarily applied only if an employer has been previously cited for a violation—Defendant is agreeable to calculate the amount in controversy using the subsequent violation rate, which would only have the effect doubling the amount in controversy on this claim.

**F.      The Amount in Controversy On Plaintiff's Claim for Inaccurate Wage Statements Is At Least $241,600.00.**

Plaintiff seeks wage statement penalties up to $4,000.00 per employee under Labor Code § 226(e) and pleads derivative inaccuracy based on unpaid time and premiums. (Compl., ¶ 43.) "Plaintiff and the other class members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a) or an aggregate penalty not exceeding $4,000 per employee." (Compl., ¶ 99.)

Under California law, when an employer fails to provide accurate wage statements, an employee can seek penalties of $50 for the initial pay period in which a violation occurs, and $100 for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee. Cal. Lab. Code § 226(e).

Defendant's notice of removal reasonably assumed a 100% violation rate because, based on Plaintiff's allegations that Defendant engaged in widespread "wage abuse" and failed to properly record and pay for time employees spent working. Plaintiff argues that Defendants' wage statement penalties calculation is improper because Defendant does "not identify what information was purportedly missing

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

from the wage statements, how it determined that every statement was deficient, or what records, if any, it reviewed before asserting a 100% violation rate." (Dkt. 15 at 19:22–24.). However, Defendant's violation rate is reasonable and appropriate, because Plaintiff alleges multiple theories of liability that, if true, each independently make every wage statement inaccurate. Under such circumstances, courts routinely approve the use of a 100% violation rate. *See Bell v. NuSil Tech. LLC*, 2021 WL 1208013, at *4, n.6 (E.D. Cal. Mar. 31, 2021) ("[D]istrict courts in this circuit have found a 100% violation rate to be reasonable in calculating the amount in dispute of a wage statement claim under certain circumstances. For example, if an employer is alleged to have failed to consistently and accurately itemize the unpaid meal or rest periods of its employees' wage statements, since a wage statement claim is a 'derivative' of the allegations of meal or rest period violations."); *Rivera v. Jeld-Wen, Inc.*, 2022 WL 3702934, at *6 (S.D. Cal. Feb. 4, 2022) (denying remand and applying a 100% violation rate; "courts have instructed that wage statement claims must be assessed in the context of the other wage-and-hour violations alleged in a complaint"; *Diaz v. Ardagh Metal Beverage USA, Inc.*, 2022 WL 3368537, at *6 (E.D. Cal. Aug. 15, 2022) (denying remand; "the Court finds the 100% wage statement violation rate to be reasonable"); *Sanchez v. Abbott Lab'ys*, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021) (denying remand and "find[ing] a 100% violation rate for inaccurate wage statement penalties wa[s] reasonable"). Thus, using a 100% violation rate, but not exceeding the $4,000 per employee cap, the amount in controversy for Plaintiff's wage statement claim is at least **$241,600.00** for the putative class ($100.00 [initial wage statements] + $50.00 [subsequent wage statements]).

### G.  Defendant's Attorneys' Fees Calculations Are Reasonable And Supported.

A "court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount in controversy requirement is met." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998). Plaintiff incorrectly argues that only fees incurred through the date of removal may be considered (Dkt. 21 at 19:25–20:4.), citing to cases such as *Hughes v. McDonalds Corp.*, No. C 14-1700 PJH, 2014 WL 3797488 (N.D. Cal. Jul. 31, 2014) and *Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998); *Faulkner v. Astro-Med, Inc.*, 1999 WL 820198, at *4 (N.D. Cal. 1999), but it is now beyond dispute that under CAFA future attorneys' fees through judgment are properly

13

considered for purposes of calculating the amount in controversy. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (quoting *Fritsch*, 899 F.3d at 788).

A defendant may show that a certain fee rate should be applied when calculating attorneys' fees by "identify[ing] awards in cases similar enough to the case at hand that the court can conclude it is more likely than not that the plaintiff may incur a similar fee award." *Lopez v. Gen. Dynamics Info. Tech., Inc.*, No. 24-CV-01743-BAS-DEB, 2025 WL 2308098, at *8 (S.D. Cal. Aug. 11, 2025). The amount in controversy pertaining to Plaintiff's claims for attorneys' fees should be calculated using a 25% benchmark rate because the "Ninth Circuit has consistently affirmed that the 25% rate is reasonable." *Vasquez v. RSI Home Products, Inc.*, 2020 WL 6778772, * 10 (C.D. Cal. Nov. 12, 2020); *citing In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011), *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003), *and Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *see also Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) (noting that "courts in this circuit consistently use the 25% benchmark rate, especially in wage and hour class actions") (quotations omitted, collecting cases).

Indeed, Plaintiff's own counsel has consistently relied on the 25% benchmark and even sought up to 35% in wage and hour class actions, thus buttressing the argument that such fees may be properly included in the amount in controversy. (*See Castro v. Paragon Indus., Inc.*, 2020 WL 1984240, at *16 (E.D. Cal. Apr. 27, 2020) (Lawyers for Justice sought and were awarded attorney's fees of 35% of the settlement fund, despite the court noting: "[t]his is higher than the 25% benchmark for the Ninth Circuit, but not uncommon for wage-and-hour class actions in the Eastern District of California (citation omitted)); *Beltran v. Olam Spices & Vegetables, Inc.*, 2021 WL 2284465, at *17 (E.D. Cal. June 4, 2021), report and recommendation adopted, 2021 WL 4318141 (E.D. Cal. Sept. 23, 2021) (Lawyers for Justice sought an award of attorneys' fees of 35% of the settlement fund); *Ferrell v. Buckingham Prop. Mgmt.*, 2020 WL 4364647, at *3 (E.D. Cal. July 30, 2020) (same); *Dawson v. Hitco Carbon Composites, Inc.*, 2019 WL 7842550, at *6 (C.D. Cal. Nov. 25, 2019) (same); *see also* Nordlander Decl. ¶ 5, Ex. A (District Court order approving $2,000,000 attorneys' fees award of $8,000,000 gross settlement); *Id*. at Ex. B (Orange County Superior Court order approving 35% of gross settlement amount).)

14

Accordingly, the amount in controversy on Plaintiff's claim for prevailing party attorneys' fees is **$1,380,741.64** ($5,522,966.54 x .25). Accounting for Plaintiff's recoverable damages ($5,522,966.54), and attorneys' fees ($1,380,741.64), the total amount in controversy is at least **$6,903,708.18**, not even accounting for Plaintiff's allegedly unreimbursed business expenses:

| Total Amount in Controversy | |
| --- | --- |
| Meal Break Claim | $552,992.82 |
| Rest Break Claim | $610,130.04 |
| Minimum Wages Claim | $1,030,372.48 |
| Waiting Time Penalties | $1,609,771.20 |
| Untimely Payment Of Wages | $1,478,100.00 |
| Noncompliant Wage Statements | $241,600.00 |
| **Damages Total:** | **$5,522,966.54** |
| Attorneys' Fees | $1,380,741.64 |
| **Total Amount In Controversy:** | **$6,903,708.18** |

## V.    CONCLUSION

Plaintiff's claims place at least $6,903,708.18 in controversy, based on conservative and reasonable estimates. Because CAFA's requirements are satisfied and Plaintiff has failed to establish a basis for remand, Defendant respectfully requests the Court to deny Plaintiff's motion to remand.

Respectfully submitted,

DATED: June 24, 2026                    SEYFARTH SHAW LLP

By:  /s/ *Jeffrey A, Nordlander*
          Justin T. Curley
          Jeffrey A. Nordlander

Attorneys for Defendant
HAWTHORN SENIOR LIVING, LLC

15

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND